**JANE DOE I, et ano., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Radovan KARADZIC, Defendant.**

**No. 93 CIV. 0878.**

United States District Court,
S.D. New York.

Dec. 2, 1997.

---

Howard, Darby & Levin (Aaron A. Marcu, J. Jay Lobell, Cynthia Soohoo, Margaret M. Donohoe, of counsel), New York City.

Center for Constitutional Rights (Beth Stephens, Jennifer Green, Michael Rattner, of counsel), New York City.

Allard K. Lowenstein International Human Rights Clinic (Harold Hongju Koh, Paul R. Dubinsky, of counsel), New Haven, CT.

Internatinal Women's Human Rights Law Clinic, Cuny Law School (Rhonda Copelon, of counsel), Flushing, NY.

International League for Human Rights, New York City, for Plaintiffs.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiffs in this action seek punitive and compensatory damages for acts of genocide, including murder, rape, torture, and other torts, allegedly committed in Bosnia–Herzegovina by forces under the command and control of defendant. Plaintiffs now move to amend their Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure and to certify a class of plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons stated *infra*, plaintiffs' motions are granted.

## BACKGROUND

The factual background of this action has been explained at length in two previous Opinions. *See Doe v. Karadzic*, 866 F.Supp. 734 (S.D.N.Y.1994); *see also Kadic v. Karadzic*, 70 F.3d 232 (2d Cir.); *cert. denied*, —— U.S. ——, 116 S.Ct. 2524, 135 L.Ed.2d 1048 (1996). The Court assumes general familiarity with the facts set forth therein. In brief, defendant Karadzic declared himself President of the self-proclaimed Bosnian–Serb re-

public of "Srpska" in 1992. Srpska is located within Bosnia–Herzegovina, in the former Yugoslavia. As is well-known, Bosnia has been riven by ethnic strife throughout the 1990's, with the Serbian, Muslim, and Croat populations battling for control in the wake of the disintegration of the former Yugoslavia.

Plaintiffs are Croat and Muslim citizens of Bosnia–Herzegovina. They allege that they are victims (and/or survivors of victims) of a campaign of ethnic cleansing directed by defendant, a Bosnian Serb, in an attempt to rid Srpska of non-Serbs. Specifically, plaintiffs claim that beginning in 1990, defendant implemented a policy promoting the rape, forced impregnation, torture, and extrajudicial killing of non-Serbs in Srpska. Plaintiffs assert that Karadzic, in his capacity as President of Srpska, had authority over the Bosnian–Serb military forces that exercised control over significant portions of Bosnia and that defendant directed those forces to carry out the ethnic cleansing campaign against Bosnian Croats and Muslims.

Plaintiffs filed their Complaint in this action on February 11, 1993, attempting to sue on behalf of the class of victims of the campaign of human rights violations allegedly committed by the military forces under defendant's control. While this Court granted defendant's motion to dismiss the claims for want of subject-matter jurisdiction, see *Doe*, 866 F.Supp. 734, the Court of Appeals for the Second Circuit reversed. *See Kadic*, 70 F.3d 232. The Second Circuit found that the Kadic and Doe plaintiffs had invoked successfully the Court's jurisdiction under the Alien Tort Claim Act, 28 U.S.C. § 1350, and the Torture Victim Protection Act of 1991, Pub.L. No. 102–256, codified at 28 U.S.C. § 1350 note (Supp. V 1993).

On remand, this Court referred the discovery phase of the case to the Honorable Henry B. Pitman, U.S. Magistrate Judge. On February 3, 1997, Judge Pitman issued an Order denying defendant's request to

have his deposition taken in Srpska and requiring him to furnish full responses to plaintiffs' first set of interrogatories. Karadzic objected to the Order. While this Court was considering Judge Pitman's Order and the objections thereto, defendant's counsel submitted an unsworn faxed letter to the Court in which Karadzic announced that he found it impossible to contest in the United States the claims in *Doe* and *Kadic. See* Letter from Radovan Karadzic dated February 28, 1997 ("Karadzic Letter"), annexed to Letter from Ramsey Clark, Esq., dated February 28, 1997. Defendant indicated that he had instructed the lawyer representing him in this action, Ramsey Clark, Esq., not to participate further in the proceedings before the Court.[1]

On July 22, 1997, plaintiffs moved to amend their Complaint and to certify a class of plaintiffs. By leave of the Court, plaintiffs provided supplemental papers in support of the motion to certify on October 20, 1997. Defendant offers no formal papers in opposition to the motions. However, attorney Ramsey Clark has submitted a number of unsworn letters to the Court in which he offers comments "that may be helpful [to the Court] in reaching balanced and fair judgments in defendant's absence on the unique and complicated issues that are presented."[2] Letter of Ramsey Clark, Esq., dated July 10, 1997. The Court has utilized all relevant information at its disposal in reaching the conclusions set forth in this Opinion.

## DISCUSSION

I. *Plaintiffs' Motion to Amend the Complaint*

■ Plaintiffs move to amend their Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Plaintiffs seek to remove Jane Doe II as a class representative and to promote nine other class members to that status. Plaintiffs also propose to add a claim for forced disappearance, a variation on

---

1. Clark has not sought permission to withdraw as defendant's counsel. Rather, he has informed the Court that "our client has instructed us not to take any further action to defend this case in the trial court except to seek appellate review."

Letter from Ramsey Clark, Esq., to the Court, dated March 11, 1997.

2. Unsurprisingly, these comments tend to support positions favorable to Karadzic.

the causes of action asserted in the original Complaint. Finally, plaintiffs propose a number of minor amendments to the text of the Complaint.

Under Fed.R.Civ.P. 15(a), "[L]eave [to amend] shall be freely given when justice so requires." It is clear that plaintiffs may amend their Complaint under Rule 15(a) to add a new plaintiff. *See, e.g., Junior Gallery, Ltd. v. Neptune Orient Line, Ltd.*, 1997 WL 26293 (S.D.N.Y.) (citing *Staggers v. Otto Gerdau Co.*, 359 F.2d 292 (2d Cir.1966)). In the instant case, plaintiffs merely seek to change named plaintiffs in a class action. The Second Circuit has established liberal guidelines dictating when a district court must grant leave to amend a complaint. Absent a showing of undue delay, bad faith, futility, or prejudice to the other party, a district court should grant leave to amend. *See Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987). Where appropriate, the Second Circuit has instructed this Court to permit leave to amend, even on the eve of trial, where the new claims arise from the same set of operative facts asserted in the original complaint. *See Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir.1986). In the instant case, the Court can discern no reason why it should not permit plaintiffs to amend their Complaint. There is no evidence of bad faith, undue delay, futility, or prejudice to defendant stemming from the proposed amendments. Therefore, plaintiffs' motion pursuant to Fed. R.Civ.P. 15 for leave to amend their Complaint is granted.

**2. *Plaintiffs' Motion for Class Certification***

 Plaintiffs move to certify a class of plaintiffs consisting of:

all people who suffered injury as a result of rape, genocide, summary execution, arbitrary detention, disappearance, torture or other cruel, inhuman or degrading treatment inflicted by Bosnian–Serb Forces under the command and control of defendant between April 1992 and the present.

Amended Complaint at ¶ 18, annexed as Exhibit B to Affidavit of Cynthia Soohoo, Esq., in Support of Plaintiffs' Motion for Class

Certification ("Soohoo Aff."). A proposed class must meet the requirements of both Fed.R.Civ.P. 23(a) and one of the three categories of classes provided in Rule 23(b) in order for the district court to certify the class.

*A. Rule 23(a)*

Rule 23(a) states:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). With regard to the first prong of the Rule 23(a) test, numerosity, it is beyond doubt that the proposed class would be far too large for joinder to be practicable. While there is no magic number that satisfies the numerosity requirement, the Second Circuit has noted that "[c]onsolidating in a class action what could be over 100 individual suits serves judicial economy." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). In the instant case, the proposed class of victims numbers in the thousands. *See, e.g.,* State Department Report dated January 31, 1994, annexed as Exhibit U ("Ex.U") to Soohoo Aff. Therefore, joinder clearly would be impracticable and plaintiffs satisfy the numerosity requirement of Rule 23(a).

Next, plaintiffs must demonstrate that there exist questions of law or fact common to the proposed class. Plaintiffs have done so. Among the common questions are: did Karadzic order Bosnian Serb troops to rape, murder, or otherwise abuse Croat and Muslim civilian non-combatants? Did he act with the intent to destroy an ethnic or religious group, in the context of plaintiffs' genocide claims? For purposes of claims under the Alien Tort Claims Act, was Srpska a state and/or did Karadzic act under color of law of the former Yugoslavia? These questions, which each individual plaintiff would face if

462

he or she sued defendant, satisfy the commonality requirement.

The typicality requirement of Rule 23(a) "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992). Plaintiffs' claims arise out of the same alleged course of conduct (the ethnic cleansing campaign), and implicate the common questions of law and fact set forth supra. Therefore, the proposed class satisfies the typicality requirement.

Finally, the named plaintiffs must demonstrate that they can represent adequately the interests of the entire class. Under Rule 23(a):

[A]dequacy of representation is measured by two standards. First, class counsel must be qualified, experienced, and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another.

*Id.* (internal quotations omitted). There can be no dispute that class counsel is well qualified to conduct the litigation. Counsel for the proposed class includes attorneys from the Lowenstein Human Rights Clinic at Yale Law School, the Center for Constitutional Rights, and Howard, Darby & Levin. These lawyers have participated in complex human rights litigation, including class actions, as well as other varieties of complex litigation. They also have sworn to commit the financial and legal resources necessary to protect the interests of the class. *See* Declaration of Harold H. Koh, Esq., in Support of Plaintiffs' Motion for Class Certification; *see also* Affidavit of J. Jay Lobell, Esq., in Support of Plaintiffs' Motion for Class Certification; Declaration of Jennifer M. Green, Esq. The Court is satisfied that plaintiffs are represented by counsel with sufficient experience and resources to handle this action.

The Court also notes that there is no evidence of any antagonism of interest between the class representatives and the absent class members. All share an interest in establishing defendant's liability for the systemic human rights violations for which he allegedly

is responsible. To establish liability, all members of the proposed class seek the same conclusions to the common questions of fact and law. As there exist no apparent antagonistic interests, the named plaintiffs have satisfied their burden of demonstrating that they will represent adequately all members of the proposed class.

*B. Rule 23(b)*

■ In their original papers moving for certification, plaintiffs sought to certify a class of plaintiffs under Rule 23(b)(3). In supplemental moving papers submitted with the Court's permission, plaintiffs moved in the alternative to certify the class under Rule 23(b)(1)(B). The Court certifies the proposed class under Rule 23(b)(1)(B).

Rule 23(b) states in relevant part:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition

(1) the prosecution of separate actions by or against individual members of the class would create a risk of . . .

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests. . . .

Fed.R.Civ.P. 23. This rule establishing "limited fund" classes "is intended to apply when claims are made by numerous persons against a fund insufficient to satisfy all claims.'" *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1303 (2d Cir. 1990) (quoting Advisory Committee Notes to Fed.R.Civ.P. 23(b)(1)(B)). "Under such circumstances, Rule 23(b)(1)(B) is designed to preserve the limited fund for the entire class against the individual claims of class members, which claims might otherwise exhaust the limited fund and thereby leave subsequent plaintiffs with no remedy." *LILCO*, 907 F.2d at 1303 (internal citations omitted).

In the instant case, the individual claims of a handful of successful individual plaintiffs doubtless would exhaust defendant's limited resources, leaving subsequent plaintiffs with no remedy. As noted *supra*, the proposed

class is quite large, likely numbering in the thousands. *See* Ex. U to Soohoo Aff. Given that Karadzic has abandoned his defense before the Court, plaintiffs are likely to be successful in this action. In other cases involving claims for human rights abuses under the Alien Tort Claims Act and the Torture Victim Protection Act, individual plaintiffs have received multi-million dollar damage awards. *See, e.g., Filartiga v. Pena–Irala,* 577 F.Supp. 860, 865–67 (E.D.N.Y.1984) (awarding over $10 million to family members of victim tortured to death by Paraguayan police); *see also Mushikiwabo v. Barayagwiza,* 94 Civ. 3627(JSM) slip op. at 6, 1996 WL 164496 (S.D.N.Y.1996) (five plaintiffs suing on behalf of Tutsi relatives murdered in genocidal campaign orchestrated by Hutu defendant awarded over $104 million).

In his letter informing the Court of his intention not to contest this action, defendant stated, "I do not have the financial resources to bring witnesses for my defense to the U.S. for either depositions, or trial." Karadzic Letter. There are thousands of plaintiffs who could be awarded multi-million dollar damages and who are likely to be successful, given defendant's declared intention not to contest claims in the U.S. In light of defendant's declaration that he cannot even afford to bring witnesses to the U.S. for trial, the Court assumes that defendant could not satisfy even a fraction of the monetary judgments that could be entered against him. Therefore, the Court certifies the proposed class under Rule 23(b)(1)(B) in order to ensure that the limited funds available to thousands of plaintiffs can be distributed equitably among all the members of the class, should plaintiffs succeed on the merits of their claims. Class certification will prevent a situation where one plaintiff lays claim to the lion's share of defendant's limited resources, leaving thousands of others with nothing simply because they lost the race to the courthouse.

■ Plaintiffs originally moved for class certification under Rule 23(b)(3), making it clear in their supplemental papers that they sought "limited fund" certification in the alternative to Rule 23(b)(3) certification. The Court has grave doubts about plaintiffs' ability to satisfy their burden under Rule 23(b)(3) of demonstrating that common questions of law and fact will predominate and that the proposed class action will be manageable. However, the Court need not decide whether to certify the class under Rule 23(b)(3), because it is generally accepted that:

> if an action falls under both Rule 23(b)(1) and Rule 23(b)(3), then whether and what type of notice is to be given to the class members not before the court and the binding effect of the judgment may depend on which of the two subdivisions is deemed to govern. Since the class members in a Rule 23(b)(3) action are given the option not to be included in the judgment, it has been held that Rule 23(b)(1) should control when both provisions apply.... [T]o hold otherwise "would permit the institution of separate litigation, thus unduly burdening the judicial system and directly contravening ... the stated purpose of Rule 23(b)(1)(B) in protecting plaintiffs against adjudications with respect to individual members of the class which as a practical matter would be dispositive of the interests of other members."

Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 1772 (citing *Van Gemert v. Boeing Co.,* 259 F.Supp. 125, 130 (S.D.N.Y.1966)).

The Second Circuit has embraced this preference for certification of classes under Rule 23(b)(1) as opposed to Rule 23(b)(3). *See Robertson v. National Basketball Ass'n,* 556 F.2d 682, 685 (2d Cir.1977). Even assuming that plaintiffs could satisfy the more stringent requirements of Rule 23(b)(3), the Court would certify the class under Rule 23(b)(1)(B). Therefore, the Court certifies the class of plaintiffs under Rule 23(b)(1) and does not reach the merits of plaintiffs' motion to certify the class under Rule 23(b)(3).

The Court notes finally that plaintiffs, in their supplemental motion papers, urged the Court to allow members of the class to opt out of the class if the Court certified a "limited fund" class (for which there exists no right to opt out). As the issue has not been briefed fully, the Court reserves decision on whether to allow members of the class to opt out of this action.

## CONCLUSION

For the reasons stated in this Opinion, plaintiffs' motions to certify a class of plaintiffs and to amend their Complaint are GRANTED.

**SO ORDERED.**