**Jane DOE I, et ano., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Radovan KARADZIC, Defendant.**

**No. 93 CIV. 0878.**

United States District Court,
S.D. New York.

Oct. 23, 1998.

---

1. Because Sturza's motion to quash was timely, his service of his motion was not contemptuous.

Paul, Weiss, Rifkind, Wharton & Garrison, New York, Maria T. Vullo, Esq., of counsel, Katherine J. Kunberger, Esq., of counsel, Catharine A. MacKinnon, Esq., Ann Arbor, MI, for S. Kadic, et al.

Howard, Smith & Levin, New York, J. Jay Lobell, Esq., of counsel, for Jane Doe, et al.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiffs in this action seek punitive and compensatory damages for acts of genocide, including murder, rape, torture, and other torts, allegedly committed in Bosnia–Herzegovina by individuals under the command and control of defendant. Pursuant to Rule 23(d) of the Federal Rules of Civil Procedure, certain plaintiffs now move to opt out of the plaintiff class certified by Opinion and Order of the Court dated December 2, 1997.

For the reasons stated in this Opinion, plaintiffs' motion is DENIED.

## BACKGROUND

The factual background of this action has been explained at length in three previous Opinions. *See Doe v. Karadzic*, 866 F.Supp. 734 (S.D.N.Y.1994); *see also Kadic v. Karadzic*, 70 F.3d 232 (2d Cir.), *cert. denied*, 518 U.S. 1005, 116 S.Ct. 2524, 135 L.Ed.2d 1048 (1996); *Doe v. Karadzic*, 176 F.R.D. 458, 461 (1997). The Court presumes general familiarity with the facts set forth therein. Briefly, in 1992 defendant Karadzic, a Bosnian–Serb, declared himself President of the self-proclaimed Bosnian–Serb republic of Srpska, located within Bosnia–Herzegovina, in the former Yugoslavia. Plaintiffs are Croat and Muslim citizens of Bosnia–Herzegovina who allege they are victims of a campaign of ethnic cleansing directed by defendant in an attempt to rid Srpska of non-Serbs. Plaintiffs assert that Karadzic, in his capacity as President of Srpska, had authority over the Bosnian–Serb military forces that exercised control over significant portions of Bosnia, and that he directed those forces to carry out the ethnic cleansing campaign against Bosnian Croats and Muslims.

The litigation against Karadzic had proceeded before this Court as two separate but related actions. *See Kadic v. Karadzic*, No. 93 Civ. 1163 (the "*Kadic* plaintiffs"), and *Doe v. Karadzic*, No. 93 Civ. 0878 (the "*Doe* plaintiffs"). Earlier in the litigation, defendant moved to dismiss the actions, asserting that this Court lacked subject matter jurisdiction over plaintiffs' claims. While the Court granted defendant's motion, *see Doe*, 866 F.Supp. 734, the United States Court of Appeals for the Second Circuit reversed, finding that this Court had jurisdiction pursuant to the Alien Tort Claim Act, 28 U.S.C. § 1350 (1994), and the Torture Victim Protection Act of 1991, Pub.L. No. 102–256 (codified at 28 U.S.C. § 1350 note (Supp. V 1993)). *See Kadic*, 70 F.3d at 251.

By Opinion and Order dated December 2, 1997, this Court granted the *Doe* plaintiffs' motion to certify the case as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The *Kadic* plaintiffs did not oppose the *Doe* plaintiffs' motion. The class is comprised of:

> all people who suffered injury as a result of rape, genocide, summary execution, arbitrary detention, disappearance, torture or other cruel, inhuman or degrading treatment inflicted by Bosnian–Serb Forces under the command and control of defendant between April 1992 and the present.

*Doe*, 176 F.R.D. at 461.

Having found that the *Doe* plaintiffs met Rule 23(a)'s preliminary requirements for

certifying a class action, the Court certified a so-called "limited fund class" pursuant to Rule 23(b)(1)(b) because of the apparent penury of defendant. Defendant had informed the Court through his counsel that he did not intend to raise a defense against plaintiffs' claims, explaining that he lacked the funds to do so. In certifying the plaintiffs as a "limited fund" class, the Court reasoned that

> there are thousands of plaintiffs who could be awarded multi-million dollar damages and who are likely to be successful, given defendant's declared intention not to contest claims in the U.S. In light of defendant's declaration that he cannot even afford to bring witnesses to the U.S. for trial, the Court assumes that defendant could not satisfy even a fraction of the monetary judgments that could be entered against him. Therefore, the Court certifies the proposed class under Rule 23(b)(1)(B) in order to ensure that the limited funds available to thousands of plaintiffs can be distributed equitably among all the members of the class, should plaintiffs succeed on the merits of their claims. Class certification will prevent a situation where one plaintiff lays claim to the lion's share of defendant's limited resources, leaving thousands of others with nothing simply because they lost the race to the courthouse.

*Doe,* 176 F.R.D. at 463.

The *Kadic* plaintiffs now seek to opt out of the class pursuant to Fed.R.Civ.P. 23(d).

## DISCUSSION

### I. *Rule 23(d)*

■ The Court certified the *Doe* plaintiffs as a "limited fund" class, pursuant to Rule 23(b)(1)(B). A class action may be certified as a 23(b)(1)(B) class when:

> the prosecution of separate actions by or against individual members of the class would create a risk of ....

> . . .

> adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to

the adjudications or substantially impair their ability to protect their interests ....
Fed.R.Civ.P. 23(b)(1). The Second Circuit has explained that this rule establishing "limited fund" classes "is intended to apply 'when claims are made by numerous persons against a fund insufficient to satisfy all claims.'" *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1303 (2d Cir. 1990) (quoting Advisory Committee Notes to Fed.R.Civ.P. 23(b)(1)(B)). "Rule 23(b)(1)(B) is designed to preserve the limited fund for the entire class against the individual claims of class members, which claims might otherwise exhaust the limited fund and thereby leave subsequent plaintiffs with no remedy." *Id.,* 907 F.2d at 1303 (internal quotation and citation omitted); *see also In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 292 (2d Cir.1992) ("[S]ome members ... might attempt to maintain costly individual actions in the hope ... that their claims are more meritorious than the claims of other class members. A mandatory class action under Rule 23(b)(1)(B) is thus necessary ... to prevent claimants with such motivations from unfairly diminishing the eventual recovery of other class members."); *In re Joint Eastern and Southern District Asbestos Litigation,* 982 F.2d 721, 736–37 (2d Cir.1992), *modified,* 993 F.2d 7 (2d Cir.1993) [hereinafter *"Findley II"*] (limited fund class appropriate when "recoveries of early successful claimants ... would ... preclud[e] later claimants ..." from recovering); *In re Diamond Shamrock Chemicals Co.,* 725 F.2d 858, 862 (2d Cir.1984); James William Moore et al., *Moore's Federal Practice* § 23 .42[2][a] (3d ed.1998); Herbert B. Newberg & Alba Conte, 1 *Newberg on Class Actions* § 4.09 (3d ed.1992).

■ Rule 23(b)(1)(B) does not provide class members with an automatic right to opt out of the class. The Second Circuit has, however, recognized that district courts have discretion to allow plaintiffs to opt out of Rule 23(b)(1)(B) classes pursuant to their power under Rule 23(d)(5) to render appropriate orders in the conduct of class actions. A district court's discretion in this regard is carefully circumscribed. As the Second Circuit explained in *County of Suffolk v. Long Island Lighting Company* [hereinafter

"*LILCO* "], "[C]ourts have *narrow* discretionary power to allow exclusion [in the (b)(1)(B) context]." 907 F.2d at 1303 (emphasis added); *accord In re Joint Eastern and Southern District Asbestos Litigation,* 78 F.3d 764, 778 (2d Cir.1996); *see also Eubanks v. Billington,* 110 F.3d 87, 94–95 (D.C.Cir.1997).

■ The Second Circuit's decision in *LILCO* establishes the parameters of this Court's discretion to permit the *Kadic* plaintiffs to opt out of the *Doe* class. Because *LILCO* squarely ·addresses the issue now before the Court, a description of the case and its procedural history is in order. In *LILCO,* Suffolk County, a business corporation and five individuals filed a putative class action against the defendant utility for billing overcharges, asserting several claims under the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.* The district court severed the claims of all plaintiffs except Suffolk County, permitting the County to proceed to trial.

Suffolk prevailed on several of its RICO claims before a jury, which awarded damages that, when trebled in accordance with the RICO damages scheme, amounted to approximately $22.9 million. The district court, however, granted judgment notwithstanding the verdict. *County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1405 (E.D.N.Y.1989). While Suffolk County's appeal was pending, the district court certified a Rule 23(b)(1)(B) "limited fund" class of LILCO ratepayers, noting that LILCO's potential liability to the class could total $10.2 billion after the requisite RICO trebling. This enormous sum, along with Suffolk County's possible recovery if it were to prevail in its appeal, convinced Judge Weinstein that LILCO's assets would not be sufficient to pay potential judgments against it, and thus justified (b)(1)(B) certification. *See id.* at 1418.

Having certified the class, Judge Weinstein permitted Suffolk County to opt out of the class pursuant to Rule 23(d). Anticipating an imminent settlement between the class and the defendant utility, Judge Weinstein articulated two reasons for letting Suffolk County opt out:

First, permitting this limited right to opt out could not jeopardize the class's ability to recover its settlement amount from the defendants should the class settle its claims with LILCO. Second, the situation of Suffolk and the procedural posture of its claims are distinguishable from the general class. At great expense Suffolk litigated its claims and obtained a jury verdict in its favor.

*Id.* at 1421.

The Second Circuit affirmed the district court's decisions to certify the class and to permit Suffolk County to opt out. *See LILCO,* 907 F.2d at 1299, 1328. The Court of Appeals noted that "while the policy concern advanced by LILCO"—that the class plaintiffs' recovery could be diminished by permitting Suffolk County to opt out—"is persuasive to the extent that it supports the conclusion that a district court *usually* should not allow a Rule 23(b)(1)(B) class member to opt out, due consideration for that concern does not require that a district court *never* be allowed to permit it." *Id.* at 1304.

The Court held that Judge Weinstein's departure from the general prohibition on permitting opt-outs from a(b)(1)(B) class was within the discretion conferred on district courts by Rule 23(d). *Id.* at 1305. The Court essentially adopted Judge Weinstein's two-part rationale for permitting Suffolk County to opt out of the class:

*The determination that the class's ability to recover could not be substantially impaired by either a settlement or a judgment on the verdict for Suffolk* eliminates from consideration an overriding reason for not allowing Suffolk to exclude itself from the class action, i.e., the loss of the benefit intended to be gained by Rule 23(b)(1)(B) certification. *Further, the determination that the situation of Suffolk herein was distinguishable from that of the general class* provides a sound reason for authorizing precisely such a step, to wit, "basic fairness." Combined, these two determinations provided a strong basis for permitting Suffolk to opt out. . . .

*Id.* (emphases added).

Thus, the primary concerns for the Court in deciding whether to grant the *Kadic* plain-

tiffs' motion to opt out are, first, whether permitting them to opt out might jeopardize the class's potential recovery—the fundamental concern underlying certification of a(b)(1)(B) class—and second, whether the situation of the *Kadic* plaintiffs and the procedural posture of their claims sufficiently distinguish them from the class. *See id.* at 1305; *County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. at 1420–21. The Second Circuit's decision in *LILCO* mandates that if such a two-part showing cannot be made, then the Court cannot exercise the "narrow discretionary power", *LILCO,* 907 F.2d at 1303, that Rule 23(d) confers for allowing Rule 23(b)(1)(B) class members to opt out of a class.

■ Most persuasive to the Court in denying *Kadic* plaintiffs' motion is the application of the first prong of the *LILCO* test to the instant litigation. The Court has serious concerns that allowing the *Kadic* plaintiffs to opt out will jeopardize the ability of the class to recover should they both obtain favorable judgments. Foremost in the Court's thinking is what led it to certify the class under Rule 23(b)(1)(B) in the first place: its determination that the defendant's assets constitute a "limited fund".

Were the Court to permit the *Kadic* plaintiffs to opt out of the class, they might win a judgment that could hinder the class's ability to recover. In short, "adjudications with respect to individual members of the class . . . would as a practical matter . . . substantially impair or impede [the class members'] ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B).

With respect to this consideration, *Kadic* plaintiffs most significant argument is that "given that both cases are proceeding in the same court before the same judge, it is unlikely that any orders or judgments in the two cases would be inconsistent." Memorandum of Law in Support of Motion to Opt Out of Class Action ("*Kadic* Mem.") at 18. The

Court is not aware of any authority authorizing the Court to limit recovery in one action out of concern for the ability of the plaintiffs in a separate action to recover from the same defendant, whether the actions proceed in the same or different fora.[1] In either situation, allowing the *Kadic* plaintiffs to opt out poses the same risk of impairing the class plaintiffs' interests.

*Kadic* plaintiffs emphasize the second part of *LILCO's* two-prong analysis: the distinct situation of the plaintiffs seeking to opt out of the class and the procedural posture of their claims. *See LILCO,* 907 F.2d at 1305. *Kadic* plaintiffs argue that because they have been independently litigating for over five years, they are entitled to continue to proceed toward judgment separately from the *Doe* class. In addition, they rely on the fact that their Complaint includes several claims not asserted in the *Doe* Complaint, particularly, allegations of "enforced pregnancy" and "forced prostitution". They note that the *Kadic* plaintiffs are exclusively women, whereas the *Doe* class includes both women and men. Finally, they highlight the fact that while both the *Kadic* plaintiffs and the *Doe* class seek compensatory and punitive damages, the *Kadic* plaintiffs are also pursuing injunctive relief. *Kadic* Mem. at 8—12.

The Court is unconvinced that their "situation" justifies granting them the right to opt out. The procedural posture of their claims is hardly analogous to that of Suffolk County in *LILCO.* As the Second Circuit emphasized in *LILCO,* Suffolk County had already won a $7.6 million jury verdict (which when trebled, as required by RICO, amounted to approximately $22.9 million) against the defendant utility, prior to gaining the right to opt out of the class certified in that litigation. *See LILCO,* 907 F.2d at 1321.

The Court acknowledges that the *Kadic* plaintiffs have expended time and money in litigating their claims thus far, but there the

---

1. The *Doe* plaintiffs propose such a plan in a letter to the Court, contending that the Court should "permit[ ] the *Kadic* plaintiffs to opt out, subject to their *pro rata* sharing of any recovery with class plaintiffs." *See* Letter from J. Jay Lobell, Esq., dated December 12, 1997, at 2. The Court is at a loss as to how this plan, which has

not had the benefit of any briefing, would work. Such a scheme is contrary to the nature of opting out, which ensures separate litigation and recovery, if any. The Court declines to stretch the discretion given to it by Rule 23(d) (as interpreted by the Second Circuit in *LILCO* ) to create such a venturesome arrangement.

comparison to Suffolk County's situation ends. The *Kadic* plaintiffs, and for that matter the class plaintiffs, have not, as Suffolk had, conducted a full trial, nor won a verdict, on their claims. In addition, the County, unlike the rest of the class in *LILCO,* was embroiled in a multi-faceted political and legal struggle with the defendant utility. In lawsuits brought by LILCO against the County and a town within it, the County stood to lose "hundreds of millions of dollars" in damages. 710 F.Supp. at 1420. As such, the County's potential conflicts of interest with the ratepayer class further necessitated permitting them to opt out. *See id.*

*Kadic* plaintiffs also contend that because they assert different claims than the *Doe* class, they meet *LILCO's* requirement that their "situation" be "distinguishable from the general class", *see LILCO,* 907 F.2d at 1305. As an initial matter, the distinction they attempt to draw is more appropriately addressed to the "common questions" and "typicality" requirements of Rule 23(a)(2) and Rule 23(a)(3), respectively, which the Court has already determined the class satisfies. *See Doe,* 176 F.R.D. at 461–62. In any event, although the *Kadic* plaintiffs do appear to assert certain claims not made by the class, much of their Amended Complaint is similar to that of the class plaintiffs.[2] Even *Kadic* plaintiffs' claims of "enforced pregnancy" and "forced prostitution"—which they rely on to distinguish their suit from the class's—could be subsumed under the rubric of other claims that both *Kadic* plaintiffs and the *Doe* class make, namely torture and genocide. In their Amended Complaint, *Kadic* plaintiffs themselves conflate these claims, describing "forced prostitution" and "forced pregnancy" as acts of "genocide" and "torture".[3]

Thus, the Court finds that the situation of the *Kadic* plaintiffs and the procedural posture of their claims are not sufficiently " ' 'distinguishable from the general class,' '

*LILCO,* 907 F.2d at 1321 (quoting *County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. at 1421), to satisfy the second prong of the *LILCO* analysis. This determination, coupled with the potential for the *Kadic* plaintiffs to recover at the expense of the class, persuades the Court that allowing the *Kadic* plaintiffs to opt out of the class would be an improper use of the "narrow discretionary power", *LILCO,* 907 F.2d at 1303, that Rule 23(d) affords. "Basic fairness", *see id.* at 1305, dictates that *Kadic* plaintiffs remain members of the *Doe* class.

## II. *Shutts Due Process Claim*

■ *Kadic* plaintiffs also assert that they have a due process interest in opting out of the class, relying on the decision of the U.S. Supreme Court in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). See *Kadic* Mem. at 18–21. *Shutts* held that the Due Process Clause of the Fourteenth Amendment requires that absent plaintiffs in a class action primarily or wholly seeking money damages be given the opportunity to opt out of the class. *See Shutts,* 472 U.S. at 811–12 & n. 3, 105 S.Ct. 2965. The Second Circuit, however, has declined to construe the *Shutts* decision as granting class members an absolute right to opt out of Rule 23(b)(1)(B) classes. *See In Re Drexel Burnham Lambert Group, Inc.,* 960 F.2d at 292; *Findley II,* 982 F.2d at 735. In *In Re Drexel Burnham Lambert Group, Inc.,* the Second Circuit held that "*Shutts* mandates that a plaintiff be permitted to opt out of a proposed class *when the court does not have personal jurisdiction over the plaintiff.* Here, appellants *have already submitted to the court's jurisdiction by filing claims* against Drexel." *See Drexel,* 960 F.2d at 292 (emphases added) (citing *Shutts,* 472 U.S. at 811–12, 105 S.Ct. 2965). The Court of Appeals's unequivocal statement disposes of any claim *Kadic* plaintiffs might

---

**2.** Both amended complaints assert claims of, *inter alia,* rape, forced pregnancy, genocide, torture and wrongful death.

**3.** *See Kadic* Am. Compl. ¶¶ 22 & 40 (genocide); *id.* ¶¶ 53, 57 (torture). Cutting even further against *Kadic* plaintiffs' attempt to set their suit apart from the *Doe* class is their inaccurate contention that the *Doe* class "has never claimed" injury resulting from forced pregnancy. *See Kadic* Mem. at 12. Their assertion is disproved by simply reading the *Doe* class's Amended Complaint, which makes several such allegations. *See Doe* Am. Compl. ¶¶ 25–26, 29.

make to a due process *right* to opt out, given that they, like the plaintiffs in *Drexel*, have submitted to this Court's jurisdiction by filing their action here.[4]

Furthermore, both the *Kadic* plaintiffs and the rest of the class seek punitive damages—an equitable claim for relief—bringing this action outside of the realm of *Shutts*, which applied to "claims wholly or predominately for money judgments." *See Shutts*, 472 U.S. at 811 n. 3, 105 S.Ct. 2965. This determination is bolstered by the fact that *Kadic* plaintiffs, unlike the rest of the class, also seek injunctive relief against defendant.

The Supreme Court's decision in *Shutts* does not require this Court to permit the *Kadic* plaintiffs to opt out. However, the due process concerns identified by *Shutts*, as well as the fact that *Kadic* plaintiffs frame some of their claims as acts of discrimination, which the class has not done, may be reason for particularized treatment less drastic than allowing them to opt out. One such possibility is certifying plaintiff subclasses, pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure. *See Drexel*, 960 F.2d at 290–91; *Findley II*, 982 F.2d at 737–39. Subclasses could potentially provide the plaintiffs with the individualized representation they seek, without jeopardizing the possible recovery of the plaintiff class. As the issue has not been briefed, the Court reserves decision on the nature and propriety of such a subclass or subclasses.

### CONCLUSION

For the reasons stated above, the motion of the *Kadic* plaintiffs to opt out is HEREBY DENIED.

**SO ORDERED.**

---

**4.** In *Shutts*, the Supreme Court confronted the due process problems of binding an *absent* class plaintiff to a judgment entered in a class action. *See Shutts*, 472 U.S. at 806–14, 105 S.Ct. 2965. *Shutts* is concerned with the difficulties of "distant forum abuse"—where a court adjudicates the claims of a party lacking "minimum contacts", *see International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), with the forum. *See* Arthur R. Miller &

David Crump, *Jurisdiction and Choice of Law in Multistate Class Actions After Phillips Petroleum Co. v. Shutts*, 96 Yale L.J. 1, 52–56 (1986); Henry Paul Monaghan, *Antisuit Injunctions and Preclusion Against Absent Nonresident Class Members*, 98 Colum. L.Rev. 1148, 1162–74 (1998). By filing their case here *Kadic* plaintiffs established such contacts with this Court. Accordingly, *Shutts* does not require that they be permitted to opt out.