**Morris Allen SMITH, et al.**

v.

**John ARMSTRONG, et al.**

**No. 3:93CV1537(JGM).**

United States District Court,
D. Connecticut.

Jan. 14, 1997.

Philip D. Tegeler, Connecticut Civil Liberties Union Foundation, Hartford, CT, for Morris Allen Smith, III.

Mark H. Robinson, Cheshire, CT, pro se.

James Doyle, Cheshire, CT, pro se.

Penny Q. Seaman, Tanya F. Clark, Bonnie L. Patten, Wiggin & Dana, New Haven, CT, Philip D. Tegeler, Connecticut Civil Liberties Union Foundation, Hartford, CT, for Jesus Ramos.

Penny Q. Seaman, Tanya F. Clark, Bonnie L. Patten, Wiggin & Dana, New Haven, CT, Philip D. Tegeler, Connecticut Civil Liberties Union Foundation, Hartford, CT, Martha Stone, Childrens' Rights, Inc., New York City, for Robert Craig, Paul Fine, Misael Diaz, Dennis Hodge.

Tanya F. Clark, Wiggin & Dana, New Haven, CT, for Floyd X. Simms.

Raymond J. Cerilli, Cheshire, CT, pro se.

Steven R. Strom, Stephen J. O'Neill, Atty. Gen.'s Office, Public Safety & Special Revenue, Hartford, CT, Jane R. Rosenberg, Ann E. Lynch, Atty. Gen's Office, Hartford, CT, for Larry R. Meachum, Leonard Barbieri, Frank M. Crose, James E. Huckabey, Michael B. Bonzagni.

Steven R. Strom, Stephen J. O'Neill, Atty. Gen.'s Office, Public Safety & Special Revenue, Hartford, CT, for John Armstrong, Dominic Mandano, Michael Donahue, Scott Hadlock, Beth Halleran, John Doe, Dept. of Corrections, State of Connecticut.

### RULING ON PLAINTIFFS' MOTION TO DECERTIFY CLASS

MARGOLIS, United States Magistrate Judge.

On August 3, 1993, plaintiffs, inmates at the Connecticut Correctional Institution at Cheshire ["CCIC"], filed this *pro se* action alleging defendants violated their constitutional right of access to the courts. (Dkt.# 6). On February 2, 1994, plaintiffs filed a motion for class certification. (Dkt.# 20). Counsel appeared on behalf of plaintiffs on February 7, 1994. (Dkt.# # 24–25). On March 1, 1994, with permission of the Court (*see* 3/1/94 endorsement on Dkt. # # 18 & 22), plaintiffs filed an amended class action complaint adding additional defendants and including not only CCIC, but also the Garner Correctional Institution in Newtown ["Garner CI"], the MacDougall Correctional Institution in Suffield ["MacDougall CI"] and the New Haven Correctional Center ["NHCC"]. (Dkt.# 28). The issue of class certification was the issue of great controversy. (*See* Dkt. # # 21, 47–53, 57, 99–100).

On August 31, 1995, this Magistrate Judge filed a Recommended Ruling granting plaintiffs' motion for class certification. (Dkt.# 105)["August 1995 Ruling"].[1] The central issue addressed in the August 1995 Ruling was the adequacy of the named plaintiffs to serve as class representatives, in light of the death of first named plaintiff, the release from prison of four named plaintiffs, and the transfer of three others. (*Id.* at 3–4). At the time this decision was issued, the operative United States Supreme Court case was *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977), which held that the "fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The August 1995 Ruling was adopted on September 20, 1995 by Chief Judge Peter C. Dorsey over defendants' objection. (*See* Dkt. # 105 & 9/20/95 endorsement thereon; Dkt. # 106). With respect to the issue of standing, in his endorsement order, Chief Judge Dorsey explained that "[w]hen challenging these core requirements [under *Bounds* ], . . . a prisoner need not show actual injury. . . . Thus a showing of actual injury by the named plaintiffs is unnecessary to establish plaintiffs' initial standing at the time the complaint was filed." *Id.* (citations omitted).

By consent of counsel (Dkt.# 113, ¶ 16), a bench trial was held before this Magistrate Judge on December 4–8, 11–13, 1995. (Dkt.# # 124–30, 132, 141–48). At the request of the court, on July 9 and 10, 1996, the parties filed supplemental posttrial briefs in light of *Lewis v. Casey*, — U.S. —, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), issued by the United States Supreme Court on June 24, 1996. (Dkt.# # 160–61).[2] The Supreme Court clarified its *Bounds* decision in *Lewis*,

---

1. As discussed in the August 1995 Ruling, defendants initially argued against certification *in toto*, but requested that if plaintiffs' motion were granted, certification should be limited to Garner CI, MacDougall CI, and CCIC, all of which were Level 4 facilities. (*Id.* at 2 n. 2). Defendants later reversed their position, arguing that not only should a class be certified, but it should be certified for all twenty-five correctional facilities,

as long as plaintiffs joined putative class members from each facility. (*Id.* at 2–3). The motion was granted with respect to CCI, Garner CI, MacDougall CI, and NHCC only. (*Id.* at 8).

2. Plaintiffs had insisted that the trial proceed, even though the *Lewis* case was pending before the United States Supreme Court.

concluding that the trial court's finding of actual injury as to one named plaintiff was "a patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief." *Id.* at ——, 116 S.Ct. at 2184. The Court reiterated that "*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis,* —— U.S. at ——, 116 S.Ct. at 2182. Instead, it requires the state to provide inmates with the tools they need "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original).

The Supreme Court emphasized the necessity of demonstrating actual injury. "[A]n inmate alleging a violation of *Bounds* must show actual injury." *Lewis,* —— U.S. at ——, 116 S.Ct. at 2179. The actual "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis,* —— U.S. at ——, 116 S.Ct. at 2181. Nor is relevant actual injury shown by an inmate who simply establishes "that his prison's law library or legal assistance program is sub-par in some theoretical sense." *Lewis,* —— U.S. at ——, 116 S.Ct. at 2180. An inmate who claims actual injury "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.*

On September 16, 1996, this judicial officer filed her Memorandum of Decision (Dkt.# 164)["Decision"], which entered judgment for the defendants, in that none of the plaintiffs who testified were able to demonstrate "actual injury," as refined in *Lewis.* (Decision at 13–17, *citing Lewis,* —— U.S. at ——–——, ——, 116 S.Ct. at 2179–80, 2183). Judgment for defendants was entered the next day. (Dkt.# 165).

On November 8, 1996, plaintiffs filed the pending motion to decertify class (Dkt.# 171), as to which defendants filed their brief in opposition on November 29, 1996. (Dkt.# 174). With permission of the court (*see* 12/5/96 endorsement on Dkt. # 175), plaintiffs filed a reply brief on December 19, 1996. (Dkt.# 176). For the reasons stated below, plaintiffs' motion is denied.[3]

## I. DISCUSSION

Among the four prerequisites to a class action is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). As one district court explained, "Adequate representation embodies a crucial due process requirement and is not a smokescreen.... It is imperative that this requirement be stringently applied since there could be a collateral attack after judgment if the interests of the members of the class were not vigorously and competently prosecuted." *Helfand v. Cenco, Inc.,* 80 F.R.D. 1, 6–7 (N.D.Ill.1977) (citation omitted). *See also Key v. Gillette Co.,* 782 F.2d 5, 7 (1st Cir.1986)(the requirement of Rule 23(a)(4) "is particularly important because the due process rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff.").

Rule 23(c)(1) further provides:

As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended *before the decision on the merits.*

(emphasis added). *See, e.g., Briggs v. Anderson,* 796 F.2d 1009, 1017–19 (8th Cir.1986)(decertifying two subclasses in employment discrimination cases after trial and prior to decision on merits, where there were no adequate class representatives); *O'Brien v. Sky Chefs, Inc.,* 670 F.2d 864, 869 (9th Cir.1982)(where plaintiffs in sex discrimina-

---

**3.** On October 22, 1996, plaintiff Claudious Channer filed a *pro se* notice of appeal. (Dkt. # 169. *See also* Dkt. # 173). There have been other post-judgment controversies as well. (*See* Dkt. # # 167, 168, 170, 172).

tion case failed to produce any evidence of classwide discrimination after more than two years of discovery, decertification of class was more appropriate than summary judgment against class); *Key v. Gillette Co.,* 104 F.R.D. 139 (D.Mass.1985)(decertifying class sex discrimination case after trial where plaintiff voluntarily terminated employment and accepted position with another employer), *aff'd,* 782 F.2d 5 (1st Cir.1986).

A district court recently explained:

The burden of persuasion throughout the litigation remains with the party desiring to maintain certification.

The standard of proof required in support of certification is rather liberal and subject to [the court's] discretion. . . . In counterpoint to the liberal certification standard, as developments in the class litigation occur, a court remains free to modify or vacate a certification order if it should prove necessary.

*Ziemack v. Centel Corp.,* 163 F.R.D. 530, 533 (N.D.Ill.1995)(multiple citations omitted).

In *White v. Bowen,* 116 F.R.D. 12, 14 (S.D.N.Y.1987), U.S. District Judge Robert L. Carter observed that "[t]he text of Rule 23(c)(1) . . . clearly does not invite amendments to class certification orders after judgment." (footnote omitted). Judge Carter continued: "'the explicit permission to alter or amend a certification order before decision on the merits plainly implies disapproval of such alteration or amendment thereafter.' To allow plaintiffs freely to exclude themselves from a class following an unfavorable decision would seriously undermine the class action device." *Id.* at 14–15 (citation omitted). Judge Carter concluded, however, that the Second Circuit has not "established an absolute rule against post-judgment amendments" to class certification. *Id.* at 15. Instead, such amendments have been allowed "in 'unusual circumstances,' where an amendment will not prejudice the defendant." *Id.* at 15 (multiple citations omitted). In *White,* Judge Carter did not permit "a departure from the general rule against post-judgment class certification amendments," in that the

proposed amendment was based upon testimony given before the court's decision. *Id.* See also *Scott v. City of Anniston,* 682 F.2d 1353, 1357–58 (11th Cir.1982)("unusual circumstances" did not exist to amend class after decision on liability).

The only "unusual circumstance" which could be considered here is the posttrial issuance of the *Lewis* decision, which clarified the *Bounds* opinion. In the Joint Trial Memorandum, plaintiffs listed at least eleven inmates as potential witnesses. (Dkt. # 113, Exh. A at 6–8). At trial, plaintiffs attempted to establish relevant actual injury in violation of *Bounds* through the testimony of four inmates—Paul Fine, housed in Garner CI, Robin Spearman, also housed at Garner CI,[4] Claudius Channer, housed at MacDougall CI, and Tobias Anderson, housed at NHCC.[5] (*See* Dkt. # 133; Decision at 14–16). As previously mentioned, the parties filed supplemental post-trial briefs with respect to *Lewis.* (Dkt.# # 160–61). In their brief, plaintiff pointed to four additional plaintiffs who allegedly were injured. (*See* Decision at 16 n. 19). At no point did plaintiffs request supplemental testimony on the issue of actual injury, which was the central focus of the *Lewis* decision. This Court concluded as follows:

Plaintiffs have failed to establish relevant actual injury in violation of *Bounds.* Each plaintiff testified about his difficulties in obtaining books from the law library or from the law clerk. Several plaintiffs testified they received moratorium letters from LAP. Nevertheless, in order to allege actual injury in violation of *Bounds,* it is insufficient for plaintiffs merely to establish that their "prison's law library or legal assistance program is sub-par in some theoretical sense." *Lewis,* [—— U.S. at ——] 116 S.Ct. at 2180. Instead, to prove actual injury, plaintiffs must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered [their] efforts to pursue a legal claim." *Id.* In this case, the State of Connecticut relied on LAP to fulfill its legal obligation to provide inmates with access to courts. Plaintiffs

---

4. Mr. Spearman was previously housed in Cheshire CI.

5. Mr. Anderson was previously housed at Cheshire CI, MacDougal CI, and Garner CI.

presented no evidence indicating that LAP's numerous shortcomings hindered their efforts to pursue their claims; to the contrary, all inmates succeeded in filing claims. Nor did plaintiffs present evidence indicating the court had dismissed their complaints "for failure to satisfy some technical requirement." *Id.* Furthermore, no inmate could show that he had suffered "arguably actionable harm that he wished to bring before the courts" but "was unable even to file a complaint" due to inadequacies in the legal assistance program. *Id.* Although Fine and Channer testified as to their inability to obtain legal assistance in immigration cases and cases involving the termination of their parental rights, these violations do not constitute actual injury in violation of *Bounds*; *Bounds* merely requires the state to provide inmates with the tools they need to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis,* —— U.S. at ——, 116 S.Ct. at 2182. Plaintiffs have not shown their "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts" has been compromised and as a result, have not asserted actual injury. *Id.*

(Decision at 16–17)(footnote omitted).

As in *White,* even assuming *arguendo* that Rule 23(c)(1) permits a postjudgment decertification, the circumstances here do not warrant "a departure from the general rule against post-judgment class certification amendments." 116 F.R.D. at 15. Plaintiffs were aware of the pendency of the *Lewis* appeal, they were given an opportunity to brief any issues raised by the *Lewis* opinion, and defendants would be prejudiced by leaving open the possibility of relitigating these issues, regarding the intentional unraveling of LAP. The prejudice to plaintiffs, in contrast, is not as significant, particularly given that LAP ceased to exist as of December 31, 1995 and ILA commenced operation as of December 1, 1995. (*See* Decision at 8–11). To the extent any plaintiffs *were* to prevail in future litigation on the merits (which is

doubtful in light of *Lewis'* strong language), they would not be entitled to any injunctive relief.[6]

## II. CONCLUSION

Accordingly, for the reasons stated above, plaintiffs' motion to decertify class (Dkt.# 171) is *denied.*

---

6. As the Court commented, DOC and the AG's Office dealt with LAP in a "heavy handed and offensive" manner, and the Court has serious concerns about the contract between DOC and ILA. (Decision at 8 n. 10, 18–19 n. 20).