**Jane DOE I, et al., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Radovan KARADZIC, Defendant.**

**No. 93 Civ. 0878 PKL.**

United States District Court,
S.D. New York.

March 27, 2000.

---

**28.** *Id.* at 130, 451 N.Y.S.2d at 68.

**29.** *Remington Paper Co. v. London Assur. Corp. of England,* 12 App.Div. 218, 43 N.Y.S. 431, 434 (4th Dept.1896) (citing cases).

**30.** *Id.*

Covington & Burling, New York City, J. Jay Lobell, of counsel, Cynthia Soohoo, of counsel, Kohn, Swift & Graf, P.C., Philadel-

phia, Pennsylvania, Robert A. Swift, of counsel, Denis F. Sheils, of counsel, Center for Constitutional Rights, New York City, Jennifer Green, of counsel, for Plaintiffs Jane Doe I et al.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Gerald E. Harper, of counsel, Maria T. Vullo, of counsel, Liza M. Velazquez, of counsel, Catharine A. MacKinnon, Ann Arbor, Michigan, for Plaintiffs S. Kadic et al.

### OPINION AND ORDER

LEISURE, District Judge.

Plaintiffs in this class action seek compensatory and punitive damages for acts of genocide, including murder, rape, torture, and other torts, allegedly committed in Bosnia–Herzegovina by individuals under the command and control of defendant Radovan Karadzic. Following class certification, plaintiffs Jane Doe I *et al.* (the "Doe plaintiffs") moved the Court for approval of their proposed class notice plan. Thereafter, plaintiffs S. Kadic *et al.* (the "Kadic plaintiffs") sought decertification of the plaintiff class or, alternatively, certification of one or more subclasses. For the following reasons, the motion to decertify is granted, and the motion to approve class notice is denied as moot.

### BACKGROUND

The litigation was originally before this Court as two separate but related actions, *Kadic v. Karadzic,* No. 93 Civ. 1163, and *Doe v. Karadzic,* No. 93 Civ. 0878. The factual background of these two cases has been explained at length in numerous previous opinions,[1] and thus the Court presumes general familiarity with the facts set forth therein.

By Opinion and Order dated December 2, 1997, the Court granted the Doe plaintiffs' motion to certify the case as a limited fund class action, pursuant to Federal Rule of Civil Procedure 23(b)(1)(B). At the time, the Kadic plaintiffs did not oppose certification. As per the December 2, 1997 Order, the class consists of "all people who suffered injury as a result of rape, genocide, summary execution, arbitrary detention, disappearance, torture or other cruel, inhuman or degrading treatment inflicted by Bosnian–Serb Forces under the command and control of defendant between April 1992 and the present."[2] *Doe,* 176 F.R.D. at 461.

Following the certification order, however, the Kadic plaintiffs began a full-fledged campaign to withdraw from the mandatory class. On October 23, 1998, the Court denied their motion to opt out of the class. *See Doe,* 182 F.R.D. at 430. Thereafter, on January 7, 1999, the Court refused the Kadic plaintiffs' request for reconsideration of its previous ruling, *see Doe,* 1999 WL 6360, at *3, and declined to certify the issue for an interlocutory appeal, *see id.* at *4.

Despite these efforts, the litigation continued to move forward. On February 16, 1999, the Doe plaintiffs sought an order approving their proposed notice plan, pursuant to Fed. R.Civ.P. 23(d)(2). *See* Doe Pl. Mem. at 3–6. However, on March 19, 1999, the Kadic plaintiffs moved for decertification of the plaintiff class, pursuant to Fed.R.Civ.P. 23(c)(1), on the ground that the class no longer satisfied the basic requirements of Rule 23. *See* Kadic Pl. Mem. at 16–37. Alternatively, they requested certification of one or more subclasses, pursuant to Fed.R.Civ.P. 23(c)(4)(B). *See* Kadic Pl. Mem. at 38–42.[3]

While the two motions were pending before this Court, on June 23, 1999, the United

---

1. *See Doe v. Karadzic,* 182 F.R.D. 424, 425–26 (S.D.N.Y.1998); *Doe,* 866 F.Supp. 734, 735–37 (S.D.N.Y.1994), *rev'd sub nom. Kadic v. Karadzic,* 70 F.3d 232 (2d Cir.1995), *reh'g denied,* 74 F.3d 377 (2d Cir.), *cert. denied,* 518 U.S. 1005, 116 S.Ct. 2524, 135 L.Ed.2d 1048 (1996); *see also Doe,* 1999 WL 6360 (S.D.N.Y. Jan. 7, 1999); *Doe,* 1997 WL 746512 (S.D.N.Y. Dec. 3, 1997); *Doe,* 1997 WL 45515 (S.D.N.Y. Feb. 4, 1997) (Pitman, J.); *Doe,* 176 F.R.D. 458, 461 (S.D.N.Y.1997); *Doe,* 1996 WL 194298 (S.D.N.Y. Apr. 22, 1996); *Kadic,* 1993 WL 385757 (S.D.N.Y. Sept. 4, 1993).

2. For purposes of class notice, the Doe plaintiffs sought to modify the class period to end on July 19, 1996, the date on which defendant publicly resigned as "head of state." Doe Pl. Mem. at 2 n. 1. However, today's decertification order moots the issue of the class's temporal scope.

3. At a March 11, 1999 pre-trial conference, the Court indicated that it would not defer deciding the motion for approval of the proposed class notice plan until after it had ruled on decertification. *See* Mar. 11, 1999 Conf. Tr. at 9–10. Yet, following *Ortiz v. Fibreboard Corp.,* 527 U.S. 815,

States Supreme Court issued its decision in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). The opinion set off a flurry of letters from counsel to the Court, replete with various enclosures, enlightening the Court as to the ruling's effect on the pending decertification motion.[4] Because Justice Souter's well-reasoned opinion in *Ortiz* provides the Court with a new starting point for determining the appropriateness of class certification on a Rule 23(b)(1)(B) limited fund rationale, this Court must again "engage in a 'rigorous analysis' of whether the conditions for maintaining a class action have been satisfied." *Koppel v. 4987 Corp.*, 191 F.R.D. 360, 364–65 (S.D.N.Y. 2000) (quoting *Non–Traditional Employment for Women v. Tishman Realty & Constr. Co.*, No. 88 Civ. 4620, 1989 WL 101940, at *1 (S.D.N.Y. Aug. 30, 1989) (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982))).[5]

## DISCUSSION

### I. Standard of Review for a Motion for Decertification

■ Under Fed.R.Civ.P. 23(c)(1), a class certification order is "conditional, and may be altered or amended before the decisions on the merits." Consequently, courts are " 'required to reassess their class rulings as the case develops.' " *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir.1999) (quoting *Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir.1998)); *see also In re Agent Orange Product Liab. Litig.*, 818 F.2d 145, 163 (2d Cir.1987) ("The court may reconsider [its decision to certify a class], by decertify-

ing, modifying the definition of the class, or creating subclasses in the light of future developments in the case."); *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir.1984) ("It is often proper . . . for a district court to view a class action liberally in the early stages of litigation, since the class can always be modified or subdivided as issues are refined for trial."); *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir.1983) ("The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."). In particular, prior to the point at which notice is sent to members of the class, a certification order "is inherently tentative." *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364.

■ Specifically, the Second Circuit has held that a "district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir.1982); *see also Monaco v. Stone*, 187 F.R.D. 50, 59 (E.D.N.Y.1999) ("A class may be decertified if later events demonstrate that the reasons for granting class certification no longer exist or never existed."); *In re Prudential Securities Inc. Ltd. Partnerships Litig.*, 158 F.R.D. 301, 304–05 (S.D.N.Y.1994) (decertifying class *sua sponte*). Although at least one district court has concluded that the burden of persuasion remains throughout the litigation with the party desiring to maintain certification, *see Smith v. Armstrong*, 968 F.Supp. 50, 53 (D.Conn.1997), the Court may not disturb its prior findings absent "some significant intervening event," *Langley v. Coughlin*, 715 F.Supp. 522, 553

119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), it became evident that decertification was a distinct possibility. As decertification now renders moot the motion for approval of the proposed class notice plan, the Court need not consider the merits of the Doe plaintiffs' motion.

**4.** *See* Letter from Maria T. Vullo, Esq. to the Court, dated June 28, 1999 (the "June 28 Letter"); Letter from William Goodman, Esq. to the Court, dated July 9, 1999 (the "July 9 Letter"); Letter from Vullo to the Court, dated July 14, 1999 (the "July 14 Letter").

**5.** In retrospect, the Court's previous prediction that *Ortiz* might necessitate revisiting the issue of certification has proved correct. On January 7, 1999, the Court referred to *Ortiz* in observing

that "[t]he Kadic plaintiffs also argue that the resolution of a case currently pending before the United States Supreme Court, which presents the question of whether there is a due process right to opt out of Rule 23(b)(1)(B) classes, may further delay this litigation." *Doe*, 1999 WL 6360, at *2 (citation omitted). The Court conceded that "[c]lass counsel's highly unusual—and notably tentative—'suggestion' that it *might* be appropriate to decertify the class is certainly something that the Court will need to consider." *Id.* at *3 (emphasis in original). Still, it denied the Kadic plaintiffs' request for an interlocutory appeal on the question of certification, stating that "[i]t would be imprudent to certify an issue for interlocutory appeal that will be resolved by the Supreme Court during the present Term." *Id.* at *4.

(S.D.N.Y.1989), *appeal dismissed,* 888 F.2d 252 (2d Cir.1989), or "a showing of compelling reasons to reexamine the question," *Wilder v. Bernstein,* 645 F.Supp. 1292, 1311–12 (S.D.N.Y.), *aff'd,* 848 F.2d 1338 (2d Cir. 1988).[6]

Despite having endured for over seven years, this litigation remains in its "early stages," *Woe,* 729 F.2d at 107, since class notification has not yet been provided, *see Falcon,* 457 U.S. at 160, 102 S.Ct. 2364. As we have not yet reached a "late juncture" in the context of this action, *Wilder,* 645 F.Supp. at 1312, any resulting prejudice to the parties arising from decertification would be minimal. *Cf. Langley,* 715 F.Supp. at 552 ("[T]he Court must take into consideration that an eve-of-trial decertification could adversely and unfairly prejudice class members, who may be unable to protect their own interests."); *see also Woe,* 729 F.2d at 107 (finding abuse of discretion where district court decertified the class after granting summary judgment in part); *Samuel v. University of Pittsburgh,* 538 F.2d 991, 995–96 (3d Cir.1976) (Clark, J., sitting by designation) (remanding for an order recertifying the class after district court decertified after trial but prior to determining damages). Therefore, the Court shall reconsider its previous decision to certify the plaintiff class in light of the Supreme Court's recent pronouncements on this important issue. *Cf. Wilder,* 645 F.Supp. at 1312 & n. 15 (refusing to decertify in part because "[d]efendants point[ed] to no change in the law that mandates decertification of the plaintiff class," but rather "simply recast the arguments they originally made against class certification"); *id.* at 1310 (holding that "compelling reasons" for reexamination "include 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear

error or prevent manifest injustice' ") (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478, at 790 (1981)).

## II. The *Ortiz* Decision

Although *Ortiz* may have thrust the "elephantine mass of asbestos cases" into further chaos, *Ortiz,* 527 U.S. 815, 119 S.Ct. at 2302, it did finally resolve long-debated questions about how to apply Rule 23(b)(1)(B) to mass tort litigation. Faced with the possibility of practically unbounded liability, the defendant, Fibreboard Corporation, a former manufacturer of a variety of products containing asbestos, had negotiated a "global settlement agreement" with representatives of its two main insurance providers and various plaintiffs' law firms. *See id.,* 119 S.Ct. at 2303–04. A group of named plaintiffs then, as agreed, filed an action seeking certification for settlement purposes of a mandatory class comprising three separate groups of plaintiffs. *See id.,* 119 S.Ct. at 2305. Following an eight-day fairness hearing, the district court certified the class and approved the settlement as "fair, adequate, and reasonable" under Rule 23(e), having concluded that permitting individual adjudications by class members "would have destroyed the opportunity to compromise the insurance coverage dispute by creating the settlement fund, and would have exposed the class members to the very risks that the settlement addresses." *Id.,* 119 S.Ct. at 2306 (quoting *Ahearn v. Fibreboard Corp.,* 162 F.R.D. 505, 527 (E.D.Tex. 1995)). The Fifth Circuit affirmed, finding certification appropriate under a limited fund rationale "based on the threat to 'the ability of other members of the class to receive full payment for their injuries from Fibreboard's limited assets.' " *Id.* (quoting *In re Asbestos Litig.,* 90 F.3d 963, 982 (5th Cir.1996)).[7]

---

**6.** *Gordon v. Hunt,* 117 F.R.D. 58, 61 (S.D.N.Y. 1987), indicates that a defendant will "bear a heavy burden to prove the necessity of ... the drastic step of decertification." That decision is distinguishable, however, on two separate grounds. First, *Gordon* involved efforts by the defendants to decertify a plaintiff class, *see id.* at 60 n. 1, while in this case, it is a group of dissatisfied plaintiffs who seek decertification. Second, the motion in *Gordon* was filed after plaintiffs' counsel had already contacted or attempted to contact over 24,000 individuals and compiled a list of 17,629 potential plaintiffs. *See*

*id.* at 61. No such efforts to identify and notify potential plaintiffs have yet been undertaken here. *Cf. Falcon,* 457 U.S. at 160, 102 S.Ct. 2364.

**7.** This decision provoked a vigorous dissent from Judge Jerry E. Smith. *See In re Asbestos,* 90 F.3d at 993–1026. The Fifth Circuit later denied rehearing *en banc,* 101 F.3d 368 (5th Cir.1996) (per curiam), from which Judge Smith also dissented, *see id.* at 369–70. The Supreme Court then vacated the original decision and remanded for further consideration in light of *Amchem*

■ The Supreme Court reversed, on the ground that the case deviated too far from the traditional limited fund class action, in which individual claims to be satisfied from a single asset would, as a practical matter, prejudice the rights of absent claimants against a fund inadequate to pay them all. *See Ortiz*, 119 S.Ct. at 2310. After examining the history of cases forming the limited fund pedigree, the Court noted that such actions shared three common characteristics: (1) "a 'fund' with a definitely ascertained limit," (2) "all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability," (3) "by an equitable, pro rata distribution." *Id.*, 119 S.Ct. at 2312. It then compared the proposed class settlement with its historical antecedents and determined that "[t]he record on which the District Court rested its certification of the class for the purpose of the global settlement did not support the essential premises of mandatory limited fund actions." *Id.*, 119 S.Ct. at 2316.

■ The Doe plaintiffs contend that, on account of several distinctions between *Ortiz* and the instant action, this Court need not reconsider its previous decision to certify the class. First, they argue that the Supreme Court's analysis in *Ortiz* was undertaken with the "heightened scrutiny" required for evaluating the fairness of a proposed settlement. *See* July 9 Letter, at 1, 2; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Second, they maintain, the *Ortiz* settlement was flawed by a conflict of interest between present and future claimants, which in turn raised the possibility of collusion between class representatives and the defendant. *See id.* According to the Doe plaintiffs, neither issue is present here.

These arguments must be rejected. Clearly, the settlement posture of *Ortiz* is a distinction without a difference, for the Court emphasized that "[t]he nub of this case is the *certification* of the class under Rule 23(b)(1)(B) on a limited fund rationale." *Id.*, 119 S.Ct. at 2307 (emphasis added). Nothing in the opinion renders its analysis unique to a settlement class. In fact, the Court referred to the aforementioned three characteristics as "the essential premises of mandatory limited fund actions," which surely extend beyond settlement classes. *Id.*, 119 S.Ct. at 2316. As for the Doe plaintiffs' attempt to characterize this litigation as lacking conflicts of interest among counsel, the history of the case belies that assertion.[8] Moreover, although the *Ortiz* Court found that the district court's failure to make evidentiary findings regarding the existence of a limited fund was "an error magnified by" the alleged conflicts of interest, *id.*, 119 S.Ct. at 2323, the decision cannot be read to require such scrutiny only when conflicts or collusion are likely.

Therefore, this Court must reexamine the appropriateness of class certification on a limited fund rationale based on the guidelines set forth in *Ortiz*. It is incumbent upon the Court to determine the extent to which the facts in this case comport with the characteristics historically common to all limited fund class actions, which, under *Ortiz*, form "at least a sufficient set of conditions to justify binding absent members of a class under Rule 23(b)(1)(B), from which no one has the right to secede." *Id.*, 119 S.Ct. at 2311. In particular, the outcome in *Ortiz* turned on the weakness of the evidentiary record upon which the district court has rested its certification order. *See id.*, 119 S.Ct. at 2316–18. Thus, the Court must evaluate whether the

Prods., Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). *See Flanagan v. Ahearn*, 521 U.S. 1114, 117 S.Ct. 2503, 138 L.Ed.2d 1008 (1997). Still, the Fifth Circuit reaffirmed its prior holding, 134 F.3d 668 (5th Cir.1998), despite another dissent from Judge Smith, *see id.* at 670–83. Finally, the Supreme Court granted certiorari, *see Ortiz*, 524 U.S. 936, 118 S.Ct. 2339, 141 L.Ed.2d 711 (1998), and again reversed, *see Ortiz*, 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999).

8. The Kadic plaintiffs have long complained of conflicts of interest between the two competing plaintiff groups. For example, they insist that the Doe plaintiffs have been unresponsive to their attempts to secure adequate representation and cite the absence of a Croat survivor among the class representatives as a "blatant inadequacy." July 14 Letter at 4. In addition, perhaps their most serious accusation concerns the Doe plaintiffs' willingness to accept defendant's "profession of poverty" in order to obtain mandatory class treatment. *Id.* These conflicts may not be as extreme as those at issue in *Ortiz*, 119 S.Ct. at 2318–20, but neither are the *Ortiz* conflicts so unique as to render its analysis inapplicable.

Doe plaintiffs have satisfied the evidentiary burden necessary to establish the existence of a limited fund.

## III. Necessary Characteristics of a Rule 23(b)(1)(B) Class Action

Rule 23(b)(1)(B) provides for certification of a mandatory class whose members have no right to opt out. In addition to the prerequisites of Rule 23(a), subsection 23(b)(1)(B) requires that "the prosecution of separate actions by or against individual members of the class would create a risk of ... adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."[9]

The *Ortiz* Court discussed various "[c]lassic examples of such a risk of impairment," and observed that in such cases, "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz*, 119 S.Ct. at 2309. Consequently, the paradigm suit under Rule 23(b)(1)(B) is the limited fund class action, in which " 'claims are made by numerous persons against a fund insufficient to satisfy all claims.' " *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1303 (2d Cir. 1990) (quoting Fed.R.Civ.P. 23, Adv. Comm. Notes). "Classic illustrations [of a limited fund class action] include claimants to trust assets, a bank account, insurance proceeds, company assets in a liquidation sale, proceeds of a ship sale in a maritime accident suit, and others." 1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 4.09, at 4–32 to 4–33 (3d ed.1992); *see also In re Drexel Burnham Lambert Group*, 960

F.2d 285, 292 (2d Cir.1992); *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 982 F.2d 721, 736–37 (2d Cir.1992), *modified on reh'g*, 993 F.2d 7 (2d Cir.1993); *Agent Orange*, 818 F.2d at 163; *In re Diamond Shamrock Chems. Co.*, 725 F.2d 858, 862 (2d Cir.1984).

Yet, while the Rule speaks to the "risk of impairment" of future claims, courts have long recognized that "the meaning of subsection (b)(1)(B) is not as broad as it seems." *Landau v. Chase Manhattan Bank, N.A.*, 367 F.Supp. 992, 998 (S.D.N.Y.1973); *see also Ortiz*, 119 S.Ct. at 2312 ("It is true, of course, that the text of Rule 23(b)(1)(B) is on its face open to a more lenient limited fund concept. . . ."). Undoubtedly, nearly every potentially large judgment risks depletion of the defendant's assets and thus creates a risk that adjudication could "as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B).

Accordingly, *Ortiz* confirmed that mandatory class treatment under a limited fund rationale must be confined to a narrow category of cases. "The cases forming this pedigree of the limited fund class action as understood by the drafters of Rule 23 have a number of common characteristics, despite the variety of circumstances from which they arose." *Ortiz*, 119 S.Ct. at 2311. As the Court recognized, "the greater the leniency in departing from the historical limited fund model, the greater the likelihood of abuse." *Id.*, 119 S.Ct. at 2313. It therefore chose to follow the "prudent course," as reflected by the Advisory Committee's distaste for creativity under Rule 23(b)(1)(B), and directed the federal judiciary to "presume that when subdivision (b)(1)(B) was devised to cover

---

9. To be sure, the language of Rule 23(b)(1)(B) does not necessarily require that there be an absolute limited fund situation. *See In re Telectronics Pacing Sys., Inc.*, 186 F.R.D. 459, 473 (S.D.Ohio 1999); *White v. National Football League*, 822 F.Supp. 1389, 1411 (D.Minn.1993); *see also Ahearn*, 162 F.R.D. at 527 ("[A]lthough the limited fund situation is commonly associated with Rule 23(b)(1)(B), the Rule itself does not require a limited fund."). However, although the limited fund rationale may not be the only justification for certification under Rule

23(b)(1)(B), it is certainly the paradigm case. *See Agent Orange*, 100 F.R.D. 718, 725 (E.D.N.Y. 1983). Thus, while there may be a different basis upon which Rule 23(b)(1)(B) can be applied to this case, because the Court originally relied solely on a limited fund rationale in certifying the plaintiff class, *see Doe*, 176 F.R.D. at 462–63, it would be imprudent to now consider alternative theories—or other subsections of Rule 23(b)—in the absence of a full briefing from the parties. *See In re Ikon Office Solutions, Inc. Securities Litig.*, 191 F.R.D. 457, 466–67 (E.D.Pa.2000).

limited fund actions, the object was to stay close to the historical model." *Id.*[10]

Having considered the history of Rule 23(b)(1)(B) and its predecessors in equity, the Supreme Court found "good reasons to treat these [three] characteristics as presumptively necessary, and not merely sufficient, to satisfy the limited fund rationale for a mandatory action." *Id.*, 119 S.Ct. at 2312. Under this standard, a majority of the Justices agreed that various features of the class certification in *Ortiz* departed markedly from limited fund antecedents. *See id.*, 119 S.Ct. at 2321. Since *Ortiz*, the lower federal courts have followed the High Court in declining to certify putative (b)(1)(B) classes that fail to conform to the traditional pedigree. *See, e.g., In re Diet Drugs Prods. Liability Litig.*, No. MDL 1203, Civ. A. 98–20594, 1999 WL 782560, at *7 (E.D.Pa. Sept. 27, 1999); *Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226, 236 (E.D.Pa.1999).

■ With these precedents in mind, this Court too must carefully scrutinize these characteristics as they apply to the situation at hand. Of particular relevance is the question of whether the parties can provide specific evidence supporting the existence of a limited fund. Based on the language in *Ortiz*, any substantial deviation from the classic limited fund class action would compel decertification. At the very least, "the burden of justification rests on the proponent of any departure from the traditional norm." *Ortiz*, 119 S.Ct. at 2312.

## IV. Specific Evidence of the Inadequacy of the Fund to Satisfy All Claims

■ "The first and most distinctive characteristic [of the limited fund pedigree] is that the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims."[11] *Id.*, 119 S.Ct. at 2311. Given the importance of this first factor, the *Ortiz* opinion admonished the district court for its "uncritical adoption" of "figures agreed upon by the parties in defining the limits of the fund and demonstrating its inadequacy." *Id.*, 119 S.Ct. at 2316. To guide future certification decisions, the Court articulated a requirement that the parties present "evidence on which the district court may ascertain the

10. No doubt the Court's conservative approach was predicated on its suspicion of Rule 23(b)(1)(B)'s applicability to mass tort cases. *See, e.g., Ortiz*, 119 S.Ct. at 2313 ("[I]t is clear that the Advisory Committee did not contemplate that the mandatory class action codified in subdivision (b)(1)(B) would be used to aggregate unliquidated tort claims on a limited fund rationale."); *id.*, 119 S.Ct. at 2313 n. 20 ("To the extent that members of the Advisory Committee explicitly considered cases resembling the current mass tort limited fund class action, they did so in the context of the debate about bringing 'mass accident' class actions under Rule 23(b)(3)."); *id.*, 119 S.Ct. at 2314–14 ("It is simply implausible that the Advisory Committee, so concerned about the potential difficulties posed by dealing with mass tort cases under Rule 23(b)(3), with its provisions for notice and the right to opt out, would have uncritically assumed that mandatory versions of such class actions, lacking such protections, could be certified under Rule 23(b)(1)(B).") (citation omitted). The Court ostensibly left for another day the question of whether this subdivision may ever be used to aggregate individual tort claims. *See id.*, 119 S.Ct. at 2314, 2322. Nevertheless, its requirement of strict adherence to the traditional limited fund model may have sounded the death knell for mass tort suits under Rule 23(b)(1)(B).

11. Although the parties have not raised this issue, the instant case departs from the traditional limited fund model in that, not unlike the typical mass tort case, there are no liquidated claims. *See Diet Drugs*, 1999 WL 782560, at *7. Unlike in *Diet Drugs*, however, there is some prior judicial experience with international human rights litigation. *See, e.g., Hilao v. Estate of Marcos*, 103 F.3d 767, 781 (9th Cir.1996); *Abebe–Jira v. Negewo*, 72 F.3d 844, 845–46 (11th Cir.1996); *Mushikiwabo v. Barayagwiza*, 94 Civ. 3627, 1996 WL 164496, at *3 (S.D.N.Y.1996); *Filartiga v. Pena–Irala*, 577 F.Supp. 860, 865–67 (E.D.N.Y. 1984). Hence, there may well be a "reasonable method by which to calculate, or even estimate with comfortable certainty, [defendant's] potential liability" to the class members. *Diet Drugs*, 1999 WL 782560, at *7; *see also Ortiz*, 119 S.Ct. at 2316 ("[W]e might assume *arguendo* that prior judicial experience with asbestos claims would allow a court to make a sufficiently reliable determination of the probable total."). *But cf. Mateo v. M/S KISO*, 805 F.Supp. 761, 773 (N.D.Cal. 1991) (stating that although "damage awards in other wage claim suits by seamen against shipowners have risen into the tens of millions of dollars," "this Court's rulings must be based on the record in this case, and that record is insufficient to support certification under Rule 23(b)(1)"). Therefore, this departure from the traditional model does not alone necessitate decertification.

limit and the insufficiency of the fund, with support in findings of fact following a proceeding in which the evidence is subject to challenge." *Id.; see also In re Dennis Greenman Securities Litig.*, 829 F.2d 1539, 1546 (11th Cir.1987) ("The court made no specific findings of the defendants' financial status. Absent such findings the district court could not properly rely on this ground for certification."); *In re School Asbestos Litig.*, 789 F.2d 996, 1005 (3d Cir.1986) (holding that the district court erred by certifying a Rule 23(b)(1)(B) class in the absence of a factual inquiry); *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 306 (6th Cir.1984) ("[T]he district court, as a matter of law, must have a fact-finding inquiry on this question and allow the opponents of class certification to present evidence that a limited fund does not exist."); *In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 852 (9th Cir.1982) ("The district court erred by ordering certification without sufficient evidence of, or even a preliminary fact-finding inquiry concerning [the defendant's] actual assets, insurance, settlement experience and continuing exposure."); *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407, 1418 (E.D.N.Y.1989) ("The plaintiffs must offer evidence of the likely insolvency of the defendants should plaintiffs prevail in their claims and that there is a substantial probability of success in the suit."), *aff'd*, 907 F.2d 1295 (2d Cir.1990); *Payton v. Abbott Labs*, 83 F.R.D. 382, 389 (D.Mass.1979) ("I do not believe that, without more, numerous plaintiffs and a large Ad damnum clause should guarantee (b)(1)(B) certification."), *vacated on other grounds*, 100 F.R.D. 336 (D.Mass.1983). Upon hearing such evidence, the district court must make an independent finding regarding the "the upper limit of the fund itself, without which no showing of insufficiency is possible." *Ortiz*, 119 S.Ct. at 2317; *cf. Chateau de Ville Prods., Inc. v. Tams–Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir.1978) (explaining that although Rule 23(c)(1) requires the district court to determine whether to certify a case as a class action "[a]s soon as practicable after the commencement of [the] action," "[t]he court should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues").

## A. Scope of the Fund

■ Before determining whether the so-called "fund" is a "limited" one, the Court must first ascertain the parameters of the "fund" at issue in this case. The Doe plaintiffs submit that the amount potentially available to satisfy a judgment in this case is the defendant's current net wealth, *see* Doe Pl. Opp. Mem. at 8, an assumption upon which the Court originally certified the plaintiff class, *see Doe*, 176 F.R.D. at 462. This comports with the Supreme Court's recognition that a defendant's assets "would obviously be 'limited' in the traditional sense if the total of demonstrable claims would render [him] insolvent." *Ortiz*, 119 S.Ct. at 2317.

Yet, in contrast to the traditional limited fund class action, the defendant here is neither a corporation with limited liability nor "a fixed and limited fund in danger of depletion," *Moore v. Ross*, 502 F.Supp. 543, 550 (S.D.N.Y.1980), but rather an individual, living person subject to *in personam* claims. *See In re Asbestos Litig.*, 134 F.3d at 673 (Smith, J., dissenting); *see also Madanes v. Madanes*, 981 F.Supp. 241, 262 (S.D.N.Y. 1997) ("[T]here is a difference between an action to obtain money from a specific, limited fund, and an action that seeks damages against third parties for misdeeds potentially related to the fund."). Any judgment against the defendant will be enforceable against him for at least twenty years, *see* Fed.R.Civ.P. 69(a); N.Y. C.P.L.R. § 211(b), and any assets subsequently discovered by the plaintiffs or earned by the defendant will be subject to the judgment. Hence, the Doe plaintiffs must establish not only that the defendant's current net worth is insufficient to satisfy a potential judgment, but also a "substantial probability" that the defendant will be unable to pay such claims over the life of the judgment. *Cf. In re Joint Eastern & Southern Dist. Asbestos Litig.*, 982 F.2d at 727 (requiring "a substantial probability that payment of damage awards would exhaust the Trust's available and projected assets").[12]

---

12. Because there is insufficient evidence to support a finding of a limited fund, *see infra* at 142–444, the Court need not decide whether a class action may ever be certified on a limited fund

## B. Evidentiary Requirement

 Based on the above definition of the "fund" at stake in this litigation, the Court must conclude that there can be "no adequate finding of fact to support [the] application [of Rule 23(b)(1)(B)] here." *Ortiz*, 119 S.Ct. at 2317. As the Kadic plaintiffs correctly point out, *see* Kadic Pl. Mem. at 18, there has been no fact-finding inquiry to examine evidence supporting certification under Rule 23(b)(1)(B). *See Ortiz*, 119 S.Ct. at 2318; *In re Temple*, 851 F.2d 1269, 1272 (11th Cir.1988); *Greenman*, 829 F.2d at 1546; *School Asbestos Litig.*, 789 F.2d at 1005; *Bendectin*, 749 F.2d at 306; *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 129 B.R. 710, 825 (Bankr.E.D.N.Y.1991), *vacated on other grounds*, 982 F.2d 721 (2d Cir.1992), *modified on reh'g*, 993 F.2d 7 (2d Cir.1993). Neither discovery nor hearings were ever conducted. Nor was any evidence obtained or considered, with the single exception of defendant's own self-serving, unsworn assertion that he could not afford to defend the action in the United States.[13] Aside from the Doe plaintiffs' "ipse dixit assertion that such a certification is needed," there is no indication of defendant's true financial status. *Langley*, 715 F.Supp. at 565; *see also County of Suffolk*, 710 F.Supp.

at 1417 (E.D.N.Y.1989) ("Mere allegations that the fund is insufficient are not enough to support certification of a class under Rule 23(b)(1)(B)."). Because there is no credible evidence before the Court regarding the amount or whereabouts of defendant's assets—not to mention his future earning potential—it is impossible to make an "independent valuation" of the limit of the so-called "fund." *Ortiz*, 119 S.Ct. at 2318.

The Doe plaintiffs urge the Court to ignore the requirement of formal evidentiary findings on the grounds that such findings are both unnecessary and impractical, given the unique circumstances of this litigation. *See* Doe Pl. Opp. Mem. at 7–9. They note that defendant's instruction to his attorneys not to participate further in District Court proceedings renders it unlikely that additional evidence would be adduced through such a process, *see Doe*, 176 F.R.D. at 460, and cite the Kadic plaintiffs' admission that defendant has "refus[ed] to comply with document requests expressly seeking documentation as to the whereabouts, types and amounts of his assets," Doe Pl. Opp. Mem. at 7–8 (quoting Kadic Pl. Mem. at 19). This failure to obey various discovery directives, they argue, would entitle them to an order, pursuant to Fed.R.Civ.P. 37(b)(2)(A), establishing the existence of a limited fund.[14]

---

rationale in a case against an individual, unindemnified, uninsured defendant. Nevertheless, it is worth noting that there is no precedent for such an decision. Past decisions reflect the difficulties in mounting such a case. *See, e.g., Trautz v. Weisman*, 846 F.Supp. 1160, 1169 (S.D.N.Y. 1994) (denying certification where "no evidence has been submitted to establish the amount of funds [individual] defendants will have at their disposal should plaintiffs prevail"); *Langley*, 715 F.Supp. at 564 ("[W]ith respect to [the individual] defendant, it may well be the case that in the event of an adverse judgment ..., the State of New York will in fact be the ultimate source of payment, in which case no fund exhaustion problem need be faced. Whether that would be the case is unclear on the present record, but as the proponents of the mandatory class certification, plaintiffs bear a burden of proof that they have not attempted to satisfy.").

A few courts have certified (b)(1)(B) classes in cases with multiple defendants, where some of the defendants were natural persons and others were corporations or governmental entities. *See, e.g., Ikon Office Solutions*, 2000 WL 276916, at *8; *In re First Commodity Corp. of Boston Customer Accounts Litig.*, 119 F.R.D. 301, 311 (D.Mass.1987); *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 708 (E.D.Mich.1985); *Co-*

*burn v. 4–R Corp.*, 77 F.R.D. 43, 45 (E.D.Ky. 1977). The Doe plaintiffs would surely point to *Hilao v. Estate of Marcos*, 103 F.3d 767, 774 (9th Cir.1996), as an example of a deposed foreign dictator being forced to face a class action initiated by his victims. However, *Marcos* is inapposite, as the defendant in that case was Marcos's estate, not Marcos himself. Since Marcos's earning potential presumably ceased upon his death, for purposes of Rule 23(b)(1)(B), his estate could appropriately be considered a limited fund.

**13.** In a letter to the Court, defendant stated, " 'I do not have the financial resources to bring witnesses for my defense to the U.S. for either depositions, or trial.' " *Doe*, 176 F.R.D. at 462 (quoting Letter from Radovan Karadzic to the Court, dated February 28, 1997). Relying on this declaration, the Court originally certified the class on the "assum[ption] that defendant could not satisfy even a fraction of the monetary judgments that could be entered against him." *Id.*

**14.** Fed.R.Civ.P. 37(b)(2) provides that "[i]f a party ... fails to obey an order to provide or permit discovery, including an order made under [Rule 37(a)], ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

The Court finds these arguments unavailing. It may well be true that, as the Doe plaintiffs have long suggested, "a potential judgment is likely to total in excess of $10 billion, and there are very few individuals on the face of the earth who have such resources." July 9 Letter at 2.[15] Nevertheless, *Ortiz* unequivocally proclaims that "objecting and unidentified class members alike are entitled to have the issue settled by specific evidentiary findings independent of the agreement of defendants and conflicted class counsel." *Ortiz,* 119 S.Ct. at 2318. For example, in *Agent Orange,* 100 F.R.D. 718, 726–27 (E.D.N.Y.1983), *aff'd,* 818 F.2d 145 (2d Cir.1987), upon which the Doe plaintiffs rely, the Court appointed a special master to conduct a limited evidentiary hearing during which defense counsel submitted certified copies of the defendant's most recent balance sheets and plaintiffs' counsel made a brief presentation regarding the nature of the damages alleged in a cross-section of their cases. The special master ultimately found that the defendants' combined net assets, including insurance, totaled approximately $9 to $16 billion. *See id.* at 727. Likewise, in *In re Estate of Marcos Human Rights Litig.,* MDL No. 840 (D.Haw. Apr. 15, 1992), *aff'd sub nom. Hilao v. Estate of Marcos,* 103 F.3d 767, 774 (9th Cir.1996), Imelda Marcos responded to the plaintiffs' interrogatories by providing independently verifiable financial information regarding the assets held by her late husband's estate. In particular, she identified specific banks in which funds were located and estimated the "approximate amount which may be located in these banks to be in the range of $300 Million [to] $320 Million." Def. Answer to Pl. Interrog. No. 4, *Hilao v. Marcos,* Civ. No. 86–0390 (Soohoo Aff., Exh. 5), at 3. By contrast, in the case at hand, there is no credible evidence whatsoever concerning the whereabouts or amount of defendant's assets or the lack thereof.

The Doe plaintiffs' second argument has somewhat more merit, for defendant's defiance of numerous court orders may indeed entitle them to a Rule 37(b)(2)(A) decree establishing the existence of a limited fund. To be sure, defendant has consistently refused to comply with his discovery obligations, thereby impeding the plaintiffs' access to evidence that might enable them to make the necessary showing of inadequate assets. However, this Court is unaware of any precedent for a Rule 23(b)(1)(B) certification based on such an order, and therefore will not entertain such a request in the absence of a formal motion. *See Heller v. Wofsey, Certilman, Haft, Lebow & Balin,* No. 86 Civ. 8967, 1989 WL 79386, at *9 (S.D.N.Y. July 11, 1989); *Grossman v. Schwarz,* 125 F.R.D. 376, 389 (S.D.N.Y.1989).

Also misplaced is the Doe plaintiffs' reliance on *Coburn v. 4–R Corp.,* 77 F.R.D. 43, 45–46 (E.D.Ky.1977), *mandamus denied sub nom. Union Light, Heat & Power Co. v. U.S. Dist. Court,* 588 F.2d 543 (6th Cir.1978). As an initial matter, it should be noted that while the Sixth Circuit has never explicitly overruled *Coburn,* it has repudiated its cursory certification procedure in no uncertain terms. *See, e.g., In re American Med. Sys. Inc.,* 75 F.3d 1069, 1087 (6th Cir.1996) ("[T]he district judge in this case took improper action by essentially failing to make any genuine findings on any of the elements of Rule 23 when the record before him required such action."); *Bendectin,* 749 F.2d at 306 ("No findings were made on the record as to this conclusion, and the petitioners in this case were given no opportunity to dispute whether there was a limited fund.... [T]he district court, as a matter of law, must have a fact-finding inquiry on this question and allow the opponents of class certification to present evidence that a limited fund does not exist.") (citations and footnote omitted). As such, many judges who have relied on *Coburn* to certify classes without undertaking the now-obligatory fact-finding inquiry have been sharply rebuked by the appellate courts.[16] Finally, any argument that certifi-

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order."

**15.** According to *Forbes,* as of April 30, 1999, there were 32 individuals worldwide worth more than $10 billion. *See 200 Global Billionaires,* Forbes, July 5, 1999, at 158–228; James Cox, *Technology, Stock Market Click for World's Richest,* U.S.A. Today, June 21, 1999, at 2A.

**16.** *See, e.g., In re Asbestos Litig.,* 90 F.3d at 983, 986, 987 (5th Cir.1996), *rev'd sub nom. Ortiz,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715

cation might be appropriate without specific district court findings is implausible in light of *Ortiz*.

In sum, under the standard articulated by *Ortiz*, the Doe plaintiffs have not satisfied their burden of "defining the limits of the fund and demonstrating its inadequacy." *Ortiz*, 119 S.Ct. at 2316. As in *Cullen*, 188 F.R.D. at 236, the Doe plaintiffs "did not make their 'limited fund' claim with much force, submitting little evidence." *See also Trautz v. Weisman*, 846 F.Supp. 1160, 1169 (S.D.N.Y.1994) ("[N]o evidence has been submitted to establish the amount of funds defendants will have at their disposal should plaintiffs prevail."). Their attorneys even concede that defendant may have assets hid-

den in various locations, including perhaps the United States.[17] In short, there is insufficient evidence for the Court to make a finding on whether or not a limited fund exists. Given this substantial deficiency, the Court need not consider whether the putative class action conforms to the second and third traditional characteristics identified by *Ortiz*, as the first factor alone is enough to convince the Court that certification under Rule 23(b)(1)(B) is inappropriate.

Accordingly, the Court shall grant the Kadic plaintiffs' motion to decertify the plaintiff class. Because there is no longer a class, the Doe plaintiffs' motion for approval of the proposed class notice plan must be denied as moot.[18]

(1999); *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 129 B.R. 710, 828 (E.D.N.Y. 1991), *rev'd*, 982 F.2d 721, 737 (2d Cir.1992) (distinguishing *Coburn*), *modified on reh'g*, 993 F.2d 7 (2d Cir.1993); *In re Asbestos School Litig.*, 104 F.R.D. 422, 437 (E.D.Pa.1984), *rev'd sub nom. In re School Asbestos Litig.*, 789 F.2d 996, 1002–07 (3d Cir.1986); *In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 526 F.Supp. 887, 897 (N.D.Cal.1981), *rev'd*, 693 F.2d 847, 852 (9th Cir.1982); *see also Jackson Lockdown*, 107 F.R.D. at 712 (relying on, but distinguishing the case from, *inter alia*, *Coburn*, on the ground that it had "consider[ed] the evidence and ma[de] findings regarding the limited fund involved").

17. J. Jay Lobell, Esq., one of the attorneys for the Doe plaintiffs, recently informed the Court that " 'the understanding of individuals associated with this class action was that Karadzic may have assets in the United States that could be used to partially satisfy a potential class judgment,' " though he had yet to uncover any " 'firm information' " of any such assets. *Doe*, 1999 WL 6360, at *2 (quoting Letter from J. Jay Lobell, Esq. to the Court, dated Oct. 19, 1998, at 3). This assertion was advanced in support of Lobell's suggestion that the court consider decertification of the plaintiff class as an alternative to granting the Kadic plaintiffs' request to opt out. *See generally Doe*, 182 F.R.D. at 426–30 (denying the Kadic plaintiffs' motion).

18. The parties may wish to avail themselves of an interlocutory appeal under Fed.R.Civ.P. 23(f), which became effective on December 1, 1998. Rule 23(f) provides that "[a] court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order." Prior its enactment, an order denying class certification was not immediately appealable, as such a ruling was considered not a "final order" within the meaning of 28 U.S.C. § 158(d). *See In re Chateaugay Corp.*, 930 F.2d 245, 248 (2d

Cir.1991). The Seventh Circuit has suggested, albeit in dicta, that if a ruling on a motion to decertify a class materially alters the original certification decision—as is the case here—the party aggrieved by the alteration may appeal under Rule 23(f). *See Gary v. Sheahan*, 188 F.3d 891, 893 (7th Cir.1999). In this case, the parties may invoke Rule 23(f), notwithstanding that the action began long before the enactment of the Rule. *See Richardson Electronics, Ltd. v. Panache Broadcasting, Inc.*, 202 F.3d 957, 958 (7th Cir.2000) (Posner, C.J.).

Furthermore, as Judge Weinstein recently noted in *National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F.Supp.2d 139, 160 (E.D.N.Y.1999), the appellate courts "are specifically encouraged to rely on the advice of the district court in deciding whether to take an interlocutory appeal." The Advisory Committee Note to Rule 23(f) states that "the district court often can assist the parties and court of appeals by offering advice on the desirability of appeal." Likewise, "the district court, having worked through the certification decision, often will be able to provide cogent advice on the factors that bear on the decision whether to permit appeal.... [A] statement of reasons bearing on the probable benefits and costs of immediate appeal can help focus the court of appeals decision, and may persuade the disappointed party that an attempt to appeal would be fruitless." *Id.* Given that this case has now been pending for seven years, this Court is of the belief that an interlocutory appeal on the issue of certification would unduly delay a final judgment and thus impose further human costs and impede the plaintiffs' efforts to seek justice. Furthermore, under the strict standards imposed by *Ortiz*, any appeal would likely be fruitless, particularly considering the district court's broad discretion with regard to issues of class certification. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). The Court also notes that the Doe plaintiffs previously requested decertification of the class. *See* Letter from J. Jay Lobell, Esq. to the Court, dated Oct. 19, 1998, at

## CONCLUSION

For the foregoing reasons, the Court concludes that under the standards set forth by the Supreme Court in *Ortiz v. Fibreboard Corp.*, Rule 23(b)(1)(B) certification cannot be adequately justified on the current record. Therefore, the Kadic plaintiffs' motion to decertify the plaintiff class is HEREBY GRANTED, and the Doe plaintiffs' motion for approval of the proposed class notice plan is HEREBY DENIED as moot. The parties are ordered to appear before this Court at the United States Courthouse, 500 Pearl Street, Courtroom 18B, New York, New York, on Thursday, April 13, 2000, at 10:30 a.m. for a pre-trial conference.

**SO ORDERED.**

---

3; *see also supra* note 17. Having now been granted their wish, any appeal of today's decision would be ironic, to say the least. Therefore, the Court strongly recommends against permitting such an appeal at this stage in the litigation.

Finally, Rule 23(f) explicitly states that "[a]n appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed.R.Civ.P. 23(f). Bearing in mind the "long and tortured history" of this litigation, *Swenson v. Stidham*, 409 U.S. 224, 225, 93 S.Ct. 359, 34 L.Ed.2d 431 (1972), under no circumstances will this Court stay these proceedings.